**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES and University Professionals of Illinois, Defendants.**

No. 86 C 00295.

United States District Court, N.D. Illinois, E.D.

May 2, 1990.

Sharon Seeley and Jason Hegy, E.E.O.C., and Stephen A. Yokich, Cornfield & Feldman, Chicago, Ill., for plaintiff.

Mark T. Dunn, Dunn Goebel Ulbrich Morel & Hundman, Bloomington, Ill., and Kenneth R. Dolin, Pope Ballard Shepard & Fowle, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The Equal Employment Opportunity Commission ("EEOC") has brought this action against the Board of Governors of State Colleges and Universities ("Board") and the University Professionals of Illinois ("Union"). The EEOC alleges that the defendants' collective bargaining agreement violates the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d). Currently before the Court is the EEOC's motion for partial summary judgment on the issue of liability and the Board's motion for summary judgment. For the reasons given below, we grant summary judgment in favor of the Board.

### Background

Since 1977, the Board, which oversees the operations of five state universities, has recognized the Union as the sole representative of academic employees. The relationship between these parties is governed by a collective bargaining agreement ("CBA"). Among the provisions of this agreement is a grievance procedure through which employees can seek redress of violations of the contract.

However, the CBA also includes a provision which allows the Board to terminate grievance procedures if the employee institutes proceedings involving the same subject matter in another forum. Article 17.2 of the CBA provides:

> If prior to filing a grievance hereunder, or while a grievance proceeding is in progress, an employee seeks resolution of the matter in any other forum, whether administrative of judicial, the Board or any university shall have no obligation to entertain or proceed further with this matter pursuant to this grievance procedure.

On April 9, 1984, Raymond Lewis filed a grievance pursuant to the CBA. Lewis was a faculty member at Northeastern Illinois University who was denied tenure. In his grievance, he complained that the President of the University had improperly interpreted and applied the criteria for tenure determinations.

While this grievance was pending, Lewis filed a charge with the EEOC, alleging that he had been denied tenure on the basis of his age. When the Board learned that Lewis had filed a charge with the EEOC, it invoked Article 17.2 of the CBA and suspended the grievance proceedings. Lewis subsequently updated his EEOC charge to include a charge that the Board had retaliated against him for filing an ADEA charge.

Although Lewis and the Board settled their dispute, the EEOC subsequently filed this action against the Board and the Union. The EEOC charges that, since 1979, the Board has violated § 4(d) of the ADEA by terminating the grievances of those em-

ployees who filed charges or complaints under the ADEA. The EEOC seeks to enjoin the Board from engaging in any practice that discriminates against employees who have asserted their rights under the ADEA.

Shortly after the suit was filed, the Board filed a motion to dismiss for failure to state a claim upon which relief could be granted. The Board contended that Article 17.2 was included in the CBA in order to prevent the potential inconsistent results of litigating in two forums and to save time, effort and money. Judge Susan Getzendanner, to whom this case was originally assigned, denied the motion. She held that the EEOC had stated a *prima facie* case of retaliation. In addition, Judge Getzendanner suggested that the Board's arguments relating to the purposes of Article 17.2 constituted an affirmative defense that raised issues not properly addressed on a motion to dismiss. However, she expressed doubt as to whether the justifications presented by the Board were legally sufficient to rebut a *prima facie* case of retaliation. *EEOC v. Bd. of Gov. of State Colleges & Univ.*, 665 F.Supp. 630 (N.D.Ill. 1987) ("BOG I").

After Judge Getzendanner issued this opinion, the EEOC moved for partial summary judgment on the issue of liability. Judge Getzendanner resigned shortly after issuing this opinion, and this case was reassigned to us. We held the Board's good faith justifications for including Article 17.2 in the CBA could constitute a defense to the EEOC's claim of retaliation. *E.E.O.C. v. Bd. of Gov. of State Colleges & Univ.*, 706 F.Supp. 1377, 1384 (N.D.Ill.1989) ("BOG II"). This holding rested on the Seventh Circuit's opinion in *Rose v. Hearst Magazines Division, The Hearst Corp.*, in which the Court stated that, "[i]f [an employer] acted in good faith, it cannot be logically held to have retaliated against [an employee]." 814 F.2d 491, 493 (7th Cir. 1987). We found that the evidence produced by the Board created an issue of fact as to their good faith, and we warned the EEOC that we would grant summary judgment in favor of the Board if it could not rebut this evidence. The parties have re-

sponded to this admonition by filing the current motions.

### Discussion

The Seventh Circuit has held that an employer acting in good faith cannot logically be held to have retaliated against an employee. *Rose v. Hearst Magazines Div., The Hearst Corp.*, 814 F.2d 491, 493 (7th Cir.1987). Unfortunately, the Court has not explained how the concept of "good faith" should be applied on a case by case basis. Because the Board contends that its good faith precludes a finding of retaliatory discharge, the current motions force us to delve into this rather perplexing territory.

In *Rose*, the plaintiff alleged that the Hearst Corporation retaliated against him for filing charges with the EEOC. Following a trial, the jury was presented with various special verdict questions. The jury found that Rose had proved that the filing of the EEOC charge was a determining cause for his discharge. However, the jury also found that Rose had failed to prove that Hearst had "willfully" violated age discrimination law when it discharged him. *Id.* at 493.

The Seventh Circuit found that these two findings were inconsistent and reversed the judgment. "The jury found that Hearst's violation of the Act was nonwillful. If Hearst acted in good faith, it cannot be logically held to have retaliated against Rose." *Id.* at 493. Stated another way, the Court held that an employer has not unlawfully retaliated against its employee unless it acted willfully.

At first glance, this holding seems to be at odds with some of the Court's other discussions of discriminatory intent in the context of age discrimination. In *Burlew v. Eaton*, the Court distinguished between willful and non-willful violations of the ADEA. 869 F.2d 1063, 1066 (7th Cir.1989). The Court explained that an age discrimination plaintiff need only show that age was a determining factor in the challenged action. For example, an age discrimination claim could result from an employer's unconscious application of stereotypes.

Therefore, a plaintiff can establish liability for age discrimination without presenting any evidence of the defendant's state of mind. *Id.*

■ The apparent inconsistency between *Rose* and *Burlew* can only be reconciled by distinguishing retaliation claims from ordinary age discrimination claims. While an employer may unconsciously discriminate against an employee, the same cannot be said for an act of retaliation. Retaliation, by its very nature, requires that the employer undertake its actions willfully. This distinction is implicit in the Seventh Circuit's holding that an employer who acts in good faith cannot logically be held to have retaliated against its employee. *Rose*, 814 F.2d at 493. Therefore, we find that *Rose* stands for the proposition that an employee who claims that her employer retaliated against her for exercising her rights under the ADEA must establish that the employer undertook the challenged actions with the intent to retaliate.

■ Having reached this conclusion, we must also reject the EEOC's argument that an employer's good faith should be treated as an affirmative defense, with the burden of proof resting on the employer.[1] The ultimate burden of proving that the challenged conduct violates the ADEA remains with the plaintiff. *See, e.g., Burlew*, 869 F.2d at 1063. Because willfulness is a necessary component of retaliation, evidence of the employer's good faith justifications for the challenged conduct should be treated as evidence that rebuts the plaintiff's evidence of discriminatory intent, rather than as an affirmative defense which the employer must separately prove.

■ Applying this framework to the facts at hand, we find that the Board is entitled to summary judgment. The Board has produced facts which establish that it adopted Article 17.2 in order to avoid incon-

sistent results and to save the time, money and effort resulting from litigating in two forums simultaneously. The EEOC has produced no facts which indicate that these were not the actual reasons behind the adoption of the provision.

Although it has produced no facts that suggest the Board's motives were retaliatory, the EEOC suggests that the absence of certain facts calls the Board's motives into question. First, the EEOC suggests that the Board must have willfully intended to discriminate because Article 17.2 has not been the subject of negotiations between the Board and the Union. However, we find no correlation between the absence of negotiation and the Board's motives. The fact that the Board and the Union did not haggle over the provision during negotiations neither increases nor decreases the probability that the Board's motives were discriminatory.

The EEOC also suggests that we should find that the Board willfully retaliated because it failed to conduct "studies, analyses or inquiries" or prepare "compilations or reports" related to whether Article 17.2 could actually be expected to result in savings of time, money or effort. However, as the Board observes, it is a fairly well established principle that limiting litigation to one forum conserves resources and prevents inconsistent decisions. *See, e.g., Lytle v. Household Manufacturing*, —— U.S. ——, ——, 110 S.Ct. 1331, 1337, 108 L.Ed.2d 504 (1990). The EEOC is clutching at straws when it argues that the Board's failure to research these principles suggests that it intended to retaliate against its employees.[2]

When confronted with a motion for summary judgment, a party who bears the burden for proof on a particular issue "must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which re-

---

1. We note that in both BOG I and BOG II, reference was made to the "affirmative defense of good faith." However, in BOG I, Judge Getzendanner did not consider the Seventh Circuit's opinion in *Rose*. In BOG II, we expressly declined to make a determination of whether the Board or the EEOC bore the burden of proof. 706 F.Supp. at 1383.

2. Indeed, given the Board's stated desire to save money, one might question its motives had it undertaken a costly study to affirm a relatively common sense principle.

quires trial." *Petru v. City of Berwyn,* 872 F.2d 1359, 1362 (7th Cir.1989) (emphasis in original) (quotations omitted). Because the EEOC has failed to establish a genuine issue of fact as to the Board's motives, we grant summary judgment in favor of the Board. It is so ordered.